The next case this morning is 2012-2008 MONDIS TECH v. HON HAI PRECISION and TPP, International, and others. Mr. Hacker. Good morning, Your Honors. May it please the Court, John Hacker, for repelling TPP, I'll read the federal number five minutes for rebuttal if I may. Yes. Your Honors, this case involved a completely clear settlement agreement, a completely clear dismissal order, and a pursuant to that agreement and completely clear law governing both the agreement and the order. The settlement agreement provided for dismissal of, quote, all claims to resolve the lawsuit. There were no carve-outs, no caveats. The dismissal order, in turn, dismissed all claims with prejudice, no carve-outs, no caveats. Paragraph 1.7 of the settlement agreement specifically excludes computer monitors. It says, for example, monitors or other display products of the top bickering companies and their affiliates are not televisions. Right. What extrinsic evidence do you have in the record that the intent of the parties was anything other than excluding computer monitors? Well, there's no need to turn to the extrinsic evidence, Your Honor, because that provision is absolutely clear. It's referring to exclusion of computer monitors from the TV license. That's – it's unambiguous. That's what it's talking about. The aspect of the agreement that's relevant to the computer monitors isn't about the license because no license was required. There's already a license for the computer monitors. The only dispute involving the computer monitors was just the dollars dispute. It was not about the license that was addressed in the TV part. So that language excludes monitors from the TV license. What's relevant in both the settlement agreement and the dismissal order is the dismissal of all claims with prejudice. There was a formal order saying the monitor claims, correct? Right. Was that stay ever formally lifted before the dismissal was entered? No. So, technically, there was no live claim to be dismissed. No, Your Honor, with respect, when the claims were stayed, that doesn't mean they don't exist anymore. They're just stayed and they're not addressed in the civil litigation. They're to be addressed in arbitration. But the court retains jurisdiction to do precisely this, to dismiss the case, dismiss the claims, if they are resolved for settlement, which they were here. And under the Fifth Circuit's decision in Alford, isn't dismissing arbitral claims appropriate once they're the only claims left in the lawsuit? You can do that for dismissal with prejudice, but subsequent authority in the Fifth Circuit makes clear that you need to dismiss with prejudice and specifically order arbitration if you want to preserve the claims for later arbitration. The Huntsman case by Judge Rosenthal, I think, is the best example of that. But what all those cases are saying is consistent with the unambiguous rule. And there's really no ambiguity in the precedence in the Fifth Circuit and in this court. The leading case in the Fifth Circuit is the Orrick case, which says that when you dismiss claims with prejudice, that has claim preclusive effect, unless you expressly state in the dismissal order that you're reserving some claims for a future litigation. And that makes perfect sense because the whole point of those cases is to avoid precising dispute we have before us today, where the parties, by all accounts, by everything that appears, from every word that they exchange between them, they agree to a complete dismissal of all claims, not certain claims, not the claims that were involved in the license, but all claims with prejudice. Well, how do you respond to the fact that in the settlement agreement, the release is only limited to the television claims and not the monitor claims? Because the release only needed to be limited to the television claims because the dispute with respect to the monitor claims, as I say, was the dollars dispute arising out of the Philips purchase. Once you get a dismissal with prejudice, the release follows as a matter of straightforward claim preclusion principles. You don't need a written release because if you get a dismissal, you get preclusion. Are you saying the parties actually negotiated to wrap the monitor claims up into this settlement? I'm saying that's in the settlement agreement. That is for sure. No, it doesn't say that expressly. If you're so sure that this was intended to put everything to bed, why didn't you have it say that? Because the case would say the opposite, Your Honor. That's exactly the argument that was made in the Pateen case. That you could have said, we will litigate, we are expressly allowed to, or future litigation is precluded. You could have said that. That was exactly the argument the parties seeking to deny preclusion said. And this court in Pateen said, no, you've got it backwards. That's just the opposite. If you want to preserve the right to litigate other claims, existing claims in the case, that has to be expressly stated. Because that's the way you avoid exactly this kind of dispute. If somebody wants to not dismiss all claims of prejudice, the last thing you would say, literally the last words the parties would agree to in a new settlement agreement in this order would be, we dismiss all claims of prejudice. What you say is, you know, certain claims of prejudice. Or the claims subject to the license are dismissed with prejudice. What they said is all claims. And again, Pateen, but by this court, and Oreck by the Fifth Circuit, which is the governing precedent here, say, if you want to accomplish that result, if the party in Montes' position has claims that it wants to pull back and reserve from the scope of a complete dismissal of prejudice, it has to expressly state that so that you avoid exactly the problem that we have today. I just want to ask you a question. And your answer was, well, that's what the agreement says. She asked you if you negotiated it. Right. But there's no extensive evidence as to why I didn't even negotiate it. It's not in the record. Neither party put it here. So what I'm saying is, all I can speak to, all that I would be allowed to speak to, is what the agreement says. And the agreement says, we have agreed. There's a payment term. You can see it at page 395 of the joint agreement. It's many dollars. It's confidential, so I won't say it here. But that payment term doesn't say, in consideration for the license for television, it just says we're going to pay a huge sum of money. And then there's a dismissal with prejudice of all claims. Again, the monitor claims are just money claims. Right. Well, that's right. I mean, in fact, that's one of the arguments that your friend on the other side makes pretty forcefully, and that is that to the extent that patent infringement claims are dismissed with prejudice, it doesn't matter because what existed as of that point in time was a separate contract where you would arbitrate just dollar numbers. So how do you respond to that, that that dismissal with prejudice of patent infringement claims is meaningless as it relates to the monitor agreement? A couple of points, John. First of all, it's settled that when the cases stayed, the court retained jurisdiction over the existing claims. They hadn't been dismissed. These are the monitor claims, that those claims stayed before the court to be addressed later, however the court might need to address them. This is how the court needed to address them was to dismiss those claims. To the proposition that this is a new claim, that's answered, again, by perfectly settled, unambiguous Fifth Circuit precedent, which is that you apply the same nucleus of operative facts test to determine whether or not it's some sort of new or different claim. These arise out of the same facts, and here's how Mondes described it. Here's how Mondes described the situation in their opposition to our state motion. They said the parties agreed to arbitrate the claims relating to the Phillips monitor business. So it wasn't like there were new claims, a new contract that arisen. All there was in the agreement was a private agreement to resolve the existing claims. Well, and it wasn't purely a private agreement. I mean, it was an agreement under the auspices and authority of the mediator that was then endorsed by the court, right? Oh, yes. I mean, it was a serious agreement. I'm not trying to undercut the idea that we, the parties, had agreed to arbitrate the claims. My point is simply that they had agreed to arbitrate the claims in the lawsuit through a certain set of protocols, which parties are free to do, but then they rescinded that and supplanted it by agreeing to dismiss all claims with prejudice. And I don't see how one can read the claims terms of the settlement agreement, and even more important, the claims terms of the dismissal order, and lay those against cases like OREC in the Fifth Circuit, cases like PACTV in this circuit, which say, if you want to reserve the right to litigate claims that are part of the lawsuit, if you think part of those claims, some of those claims, ought to be, can be litigated again in the future, it's a very straightforward way of doing it. There's no mysteries here, there's no gotcha. You just expressly state it. You say, these are the claims that we want to reserve the right to litigate, whether it be an arbitration or a settlement. Yes, of course, that would have been clearer. So here we have the trial judge with the same parties before it saying that they had a different intention in entering into this agreement. And with the arguments of both of us as to what each of you attended, the court proceeded, declined to stay in the arbitration. We agreed with that. I assume the arbitration is proceeded on the schedule set. Does that move this entire debate? A couple of things, Your Honor. First of all, it doesn't move the debate. And I'll explain why. Just to go to the premise of the question, it was a different judge. The judge that presided over the settlement was not the same judge. The case had been transferred to a new judge. But the first judge, Judge Ward, had reached some quite firm conclusions which were not changed by his successor. No, the first judge didn't. The judge who presided over the settlement agreement didn't reach any conclusions as to its preclusive effect. He made no decisions whatsoever. No, I'm talking about the first judge who looked at it, Judge Ward, is that right? I think that's right. And heard each side say that they had a different intention when they entered into this agreement. He reached a conclusion as to what he thought was the appropriate interpretation of an agreement that could have been clear, as we've been saying, and as my colleagues have pointed out, if the intention was to omit or include a substantial liability, it should have been referred to. I guess what I was addressing was the idea, maybe implicit in what I thought was the question, that there was some deference owed to that judge to see what the parties were doing. It was a different judge, and either way, so this court is in the same position as the second judge, just reading the documents. That's the only record before us. There's no subjective sense. There's no substantive evidence. I'm not so sure that that makes sense. But that was really a prologue to asking whether the entire situation is now moot because the arbitration has proceeded. And the answer is it's not moot because we have preserved this question before the arbitrator, whether or not the arbitrator had power to do this because its claim precluded. This court's prior ruling, I assume it was a different panel, addressing the jurisdiction of this court to address the case, has already resolved the question, whether there's jurisdiction to decide this case now because there's been a final order with respect to arbitration in the trial court. It's before this court now. It's not mooted. It could come up later if this court doesn't address it now. But either way, it will come before this court, this question whether the settlement agreement, which unambiguously dismisses all claims of prejudice, precludes the subsequent arbitration. And if I may, I'd like to reserve the balance of my time. Okay. Thank you, Your Honor. Thank you, Mr. Hackett. Mr. Black. May it please the Court. Let me address the mootness issue first because I think it's an important one here. The status of the arbitration is that all the evidence is in. The case has been submitted. Closing arguments took place on January 18th. And under the GM's rules, a decision is due by February 17th, and the arbitrator indicated that he would render a decision within that time frame. That was his expectation. And that's subject to whatever is decided here? I assume that if Your Honor's ruled that the arbitration could not go forward, that the arbitrator would respect that, but it's not technically subject to anything. The form of action here is a little unusual. It's a motion, post-judgment motion, to enjoin Mondes from proceeding with the arbitration. There's nothing more that Mondes has to do with the arbitration. The arbitration record is closed. We're just awaiting a decision. The issue of arbitrability was within the arbitrator's jurisdiction under the GM's rules, and TPB presented the issue of arbitrability, and this very issue that's before us today, to the arbitrator, who decided to proceed with the arbitration. Once the arbitration is over, we may need to seek confirmation of the arbitration. But at that point, the standard would be different. It would be the standard for review of an arbitration award, which is what we bargained for in the first instance when we entered into an arbitration agreement. Well, are you saying, are you going back and re-arguing the issues that were before the motions panel? I mean, are you saying that this is still just an appeal from a denial of an injunction, and that it's not the final order that our motions panel described it as? I'm just addressing the issue of things have moved along since the motions panel decision. We've had now submission of the evidence, conclusion of the arbitration, and we're just awaiting the award. But the form of action here is a motion to enjoin arbitration, which is now, for all intents and purposes, concluded. All right. Well, let's get to the substance of the debate. I mean, there seems like there's enough sloppy on both sides here, a lot going around on both sides. I mean, for instance, why didn't you, under 60B, ask the judge to amend the dismissal order if there was some question as to the breadth of the dismissal order? If we had not persuaded the judge to rule in our favor, we would have moved under 60B. We were confident that we were not going to need to do that, and in fact, we did not. The district court found that not only were we correct, but that their attempt to avoid the arbitration was an attempt to be unjust and a gotcha approach to race judicata. Well, it's a little unclear from the record as to who seemed to have been gotcha-ed in this process. So was this – I mean, why didn't you carve out the monitor claims if you really thought that this was not supposed to apply to the monitor claims? Well, let me give you the context here. So we had a – we filed a lawsuit against TPB relating to televisions and the unlicensed Philips monitor. Yeah, we have the context down. You can assume we know the context. Everything was – the district court severed the issues. There was a ruling from the district court. They attempted, after we entered into arbitration, to get an order dismissing the entire case. The district court said no. The televisions are still in the case. All parties have agreed that the monitor issues can be severed because they're going to arbitration. I'm going to – But you didn't actually seek arbitration. You didn't actually make the formal request for arbitration until after the dismissal. That is correct. We did not make the formal demand for arbitration until after the dismissal. So why shouldn't we assume that, you know, after everything that went on and you set aside some claims and tried others, that in the end there was an assumption that you were walking away from everything? The settlement took place in the middle of a trial. We picked a jury on Monday. There were 200 defendants. On Tuesday, we got a knock on the door and said, let's see if we can get this settled. The thing that was on the table, the pre-trial order, the issues that were going to be tried, and the issues on which we were about to go to final judgment on, which would have ended that case, all related to televisions. At no time is there anything in the record or did they ever ask for a release from the arbitration agreement, which was a separate claim, a contract claim, that they had to answer for. They did not obtain a release for it. They did not obtain a license for the Philips monitors, and there was not an issue which was going to be tried. We went to the district court and reported that the case had been resolved. The district judge said, thank you very much, DPB, you can go home, and we went to trial against the other defendants and prevailed. We then wrote the settlement agreement. We very carefully gave them exactly what they were entitled to, which was a license and a release for televisions. I think Your Honor pointed to the release language here. That's really important. Paragraph 3.3 of the settlement agreement. Yes, Your Honor. Paragraph 3.3 says that no party shall seek any judicial or government resolution without first meeting and negotiating good faith with the other party. That did not happen. There's no evidence that that happened in this case. Fundamentally, they did not. We had a contract which created just like a settlement agreement. There were no patent infringement claims in front of the district court other than sort of vestigial jurisdiction for arbitration that infringement claims became live again. What we have is what you have once you settle a case, a contract claim to pay money. The amount of money that was going to be paid was going to be determined based on two stylized arbitration questions. It's a separate claim. That claim, if we had taken that arbitration agreement and tried to bring that claim, say, out of Delaware or some other court, there would have been no federal jurisdiction over that claim because it's just a contract. There was no patent law issue that was going to be decided there. This is more like a settlement agreement where the claimant issue for money, for the payment of money, would not be extinguished based on the dismissal of the case. You still haven't answered my question, though. Why not expressly carve it out? Were you hoping that they wouldn't think about it, or was it the other way around, that they were hoping you wouldn't think about it? Everybody knows that it's the elephant in the room. Why wasn't it discussed? In our view, Your Honor, honestly, it was not the elephant in the room. In our mind, the claims relating to computer monitors had been sent to arbitration. They were in a different court. They were in a different location. They were not in front of the district court anymore. Well, they weren't pending an arbitration because you hadn't made the arbitration request yet. That's true. All you had was an agreement that said you would eventually arbitrate something. That's right. An agreement which was never negated, novated, or in any way released. We have release language in the agreement which covers only televisions and not monitors. That's what bothers me about your opponent's case, is that 1.7 in which you define out computer monitors. He says that's not what you folks had in mind. It is very clear to us what we were doing. We had a trial that was in front of us. We were busily getting ready for trial. We'd already picked a jury on a Monday. We were about to start the evidence on Friday. One of the defendants said, we'd like to settle. We said, great. We'll take your money for the televisions. Then we gave them a release for televisions. We then went on to deal with the arbitration issues, which was a separate issue, a separate claim. What we have here at the end of the day is a question of res judicata, which is a doctrine of fairness. The question is, if there's any doubt about whether or not the issue was actually submitted under the Roberto case, we should prevail. This argument that we needed to do something to carve it out is just wrong. The issues were not in front of the district court. The issue that arose in the arbitration, and which we have here, is an issue that arises under the arbitration agreement, which is a separate contract that was never novated or released. The express intent of the parties was only to provide a release and a license for televisions and not for monitors. The agreement states that no license is granted, directly or indirectly, by implication, for estoppel or otherwise, beyond the express terms hereof, and not concurrential under any circumstance entitled to any party to grant any sub-license or sub-service of matter. There is nothing in this agreement that they can point to to show an intent to give them a release from the arbitration agreement. If they had wanted a release from the arbitration claims, they would have asked for it, and we would have said no. We would have gone to trial, and we would have gotten a follow-up check. They do point to the integration clause in the settlement agreement, and you think that does not wipe out the prior arbitration agreement? No, it does not. It only relates to the subject matter hereof, which is defined in this agreement. We had a prior license, which is still in effect. If they want to claim it's not in effect, then I guess we can go back and sue them for damages for all of their monitors. There is no intent here to negate the arbitration agreement. It doesn't relate to the same subject matter as what's being released. Okay. Any more questions? Any more questions? Okay, thank you, Mr. Black. Mr. Hacker. Thank you, Honest. A couple of points. First of all, in terms of the burden about being clear, to the extent there's an ambiguity, my colleague mentioned the Liberto case, saying that you're supposed to resolve in favor of non-preclusion. If you look at Liberto, it proves our point, because the whole problem there was that the settlement agreement didn't say anything about dismissal of prejudice. The court said, we can't tell. There wasn't an adjudication of liability here because it was just a settlement that talked about other things, and so they applied the rule. When there is dismissal of prejudice, the rule is just the opposite, and this court said so in Pactide. They've got the burden exactly backwards. Are the monitors in the television based on the same nucleus of operative facts? I would say no, there's a... Okay. But there's... The Fed Circuit uses a transactional inquiry. Right, right. That's true, but the point is the arbitration agreement and the claims relating to the monitors are based on the same nucleus of operative facts. That's why the arbitration claims arising... supposedly arising from the arbitration are also precluded because they're the same claims. My colleague makes a point, I think it's going to your honors questions about section 1.7 with respect to... That section is dealing with a license. We don't dispute that. It's only about the license, so you can't... It's not... It's a definitional section. Right. That's defining license products. That's exactly what it's doing. It's not defining the claims that will be dismissed. Those are discussed elsewhere and the language is all claims will be dismissed. You don't need a license for the... It wouldn't make sense to get a license for the monitors because there wasn't an existing license. And look, your honor, if you will, at the arbitration agreement. It says definitions. Right. There's a separate... Within it, one of the definitions is of licensed products. Another definition is of television. There are two separate things within the definitional section. Right, and you read those together and what it's excluding are televisions from the licensed products or vice versa. The monitors are excluded from the licensed products because the licensed products only go to televisions. There's no question here that the license doesn't encompass monitors. The question here is whether dismissal of all claims encompasses the claims addressed to monitors and it does. So you're saying that even though there was a pre-existing license that by that dismissal of claims meant that they intended to walk away from their right to damages as it relates to that license? That's correct, your honor, because it's a payment. There's a payment in the settlement agreement for many dollars. It's right there on page 395. The claims relating to the monitors are just money claims. My opponent suggests that it's interesting that there was no license, but if you look at the arbitration agreement which was supposed to resolve this, there wouldn't have been a license there either. There was no chance a license was going to come out of this for the monitor claims because there's already a fully existing license. Right, and that arbitration agreement specifically states that the Texas litigation as it relates to the monitor claims would be dismissed. Right, which was the party's intention at the time and then that didn't happen. The court stated for whatever reason, actually the other side opposed our effort to dismiss the entire litigation and we were not successful on that. The court stated under the Supreme Court's case in Anaconda and the Fifth Circuit's case in the Jolly case, staying jurisdiction, staying the case, staying the claims, keeps jurisdiction of the court over the claims to deal with them as necessary later. Here it was necessary to deal with them by dismissing them pursuant to the unambiguous terms of the settlement agreement. Well, Judge Dillstrup's decision that said I don't see that the dismissal entry was not intended to encompass the monitor claims, wasn't that akin to his readjusting the judgment or refining the judgment under 60B? We submit no because it didn't do that and it was not asked to do it. All he did was misread and misunderstand with respect to the settlement agreement by reading the settlement agreement to be limited to television licenses when it is, in fact, limited to television licenses but there's a separate part of the agreement which requires dismissal of all claims with prejudice because they've been completely resolved by the parties. The arbitration agreement is also expressly addressed in the settlement agreement because of the integration clause which specifically says... But it does say relating to the subject matter here of which ties it back into the settlement agreement so that integration clause really doesn't get you very far unless you conclude that the settlement agreement was intended to encompass monitor content. But you can only tell that from the terms of the settlement agreement. Subject matter here is defined in the preamble. I urge the court to look at the preamble of the settlement agreement. One paragraph mentions the license and release for televisions. That's fine. But another paragraph defines the... It says the parties intend to resolve the lawsuit which is defined as the above captioned action between the parties. So it unambiguously says our intent here is to resolve the lawsuit. Again, if the parties intended to resolve part of the lawsuit, to resolve certain claims, to resolve the claims related to licenses as here and above define, Your Honor, then you would say that. But the law is clear, the settlement is clear, that all claims will be dismissed with prejudice. The consequence follows that all claims are concluded. Thank you. Thank you, Mr. Hacker. Mr. Black, the case is seconded as submission.